UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON F. BEASON,<br><br>                              Petitioner,<br><br>v.<br><br>DANNY SAMUEL, Warden,<br><br>                              Respondent. | Case No.:  3:21-cv-02052-GPC-MSB<br><br>**ORDER: (1) ADOPTING REPORT AND RECOMMENDATION; (2) OVERRULING PETITIONER'S OBJECTIONS TO THE REPORT AND RECOMMENDATION; (3) DENYING AND DISMISSING AMENDED PETITION FOR WRIT OF HABEAS CORPUS; AND (4) DENYING CERTIFICATE OF APPEALABILITY**<br><br>**[ECF Nos. 5, 27, 28]** |

## INTRODUCTION

On January 14, 2022, Petitioner Marlon F. Beason ("Petitioner"), a state prisoner proceeding with the assistance of counsel, filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in San Diego Superior Court Case No. SCD275033.  ECF No. 5.  On June 8, 2022, Respondent filed an answer and notice of lodgment.  ECF No. 11-5.  On July 6, 2022, Petitioner filed a reply.  ECF

No. 12.  On May 23, 2024, Magistrate Judge Michael S. Berg issued a Report and Recommendation ("R&R") that this Court deny the Petition.  ECF No. 27.  On June 17, 2024, Petitioner filed an objection to the R&R.  ECF No. 28.

After careful consideration of the pleadings and relevant exhibits submitted by the parties, the Court ADOPTS the Magistrate Judge's R&R denying the amended petition for writ of habeas corpus, OVERRULES Petitioner's objections to the R&R, DENIES and DISMISSES the amended petition, and DENIES a certificate of appealability.

## BACKGROUND

### I.    Factual Background

This Court gives deference to state court findings of fact, presuming them to be correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 30, 35–36 (1992) (holding that findings of fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness).  The Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *Id.*  Petitioner has not challenged the state court's findings of fact.  Therefore, the following facts are taken from the California Court of Appeal's opinion.  ECF No. 11-8; *see also People v. Beason*, 2020 WL 3564737 (Cal. Ct. App. July 1, 2020).

Around 5:00 a.m. on October 14, 2017, T.T. opened the doors to the gas station convenience store where he worked.  Shortly after opening the store, T.T. was stocking the cooler when he heard the door open and saw someone walk in.  He turned back to the cooler, then realized the person was standing near him, so he turned around.  The customer was holding a red gas can in one hand, and a green rag or towel wrapped in his other hand.  When the customer spoke, T.T. did not hear the man, and the man then lifted the towel off his hand to display a gun he was holding and repeated himself: "Give me the money."  As T.T. moved toward the register, the perpetrator told him to hurry up.  After T.T. gave the robber cash from the register, the robber left with the money, the gun, and the cash.

T.T. called 911, and he offered the operator a description of the robber as a Black male, about six feet two inches tall, between ages 30 and 40 years

2

old, with a big, muscular build, wearing a black jacket and possibly black pants, carrying a gas can and a black gun, possibly a .9 millimeter. The robber's face was covered by a mask, which came down to his chin. The robber dropped the small towel that had covered the gun when he ran out of the store.

At trial, T.T. testified he believed the robber had been waiting to enter the store because T.T. looked before opening the store, and he did not see any lights or vehicles parked in front of the store's doors, and the robber entered so soon after it opened. He also explained that he could only see part of the robber's face, his upper cheekbone and eye area, but he did not see any tattoos on the robber's neck or notice the robber's eye color.

When police responded to the scene, they collected video surveillance from several cameras, as well as the bright green towel that had been wrapped around the robber's hand and which the robber left behind. The towel was tested for DNA, and there was a 91 percent contributor and a nine percent contributor. The information was entered into CODIS, which returned a possible suspect whose DNA matched the 91 percent contributor. When the criminologist compared the DNA from the 91 percent contributor to Beason, he found "it [was] 7.78 times 10 to the 27th times" more likely to match Beason than not—"that would be 778 with 25 zeros," or an "octillion."

On December 19, 2017, police searched Beason's Yukon as part of a coordinated traffic stop to arrest him. From the vehicle, police collected a black drawstring-like bag or satchel with a Harley Davidson motorcycle logo on the outside of it. Detective Javier Padilla recovered a handgun from inside the bag and removed a loaded magazine from the weapon. Once removed the weapon to render it safe, he left the bag on the seat of the vehicle and left it for another police officer to collect and photograph. There was a bright green towel in the bag with the gun.

Police also recovered from the vehicle a red gas can, which they later determined was not an exact match to the gas can used during the robbery. They also found a pair of binoculars, which were folded small enough to fit in the palm of a person's hand, and a black hoodie sweatshirt.

3

Police next searched Beason's residence.  There, they saw green towels similar to the one recovered at the crime scene, but they did not collect them because police were searching for clothing and firearms.  Police collected black pants similar to those the robbery suspect wore in the video surveillance, and they found a backpack that contained a magazine and ammunition for a .40 caliber weapon, the same style of gun recovered from Beason's vehicle. Police looked for low-quarter dark or gray shoes, with a rubber covering over the toe, like ones the robbery suspect wore, and they recovered a similar pair from Beason's residence.  They also recovered motorcycle gloves, but those did not match the motorcycle gloves worn by the robber in the video surveillance.

Detective Padilla interacted with Beason on December 19, 2017.  At trial, he described Beason as six foot two inches to six foot four inches, between 250 and 290 pounds, and as having a "large build, a large frame," "a big person in height," "not a thin person," but also not fat, more "muscular, thick build."  He acknowledged that has a tattoo on his neck of three stars, with the largest one closer to the ear, then descending in size as they go down the neck.  He told the jury he watched the store surveillance video 20 to 40 times.  He did not see any distinct tattoos on the suspect in the video surveillance. He explained that sometimes surveillance video does not capture something as distinct as a tattoo, just like the videos do not always capture the exact letters on license plates.  He pointed out in a still from the video that there was something in the area of the neck.

Detective Padilla testified he had an opportunity to watch Beason walk during their interactions.  He explained that when the suspect in the robbery video took footsteps forward, his knees rotated inward a bit, and he noticed Beason did the same thing when Beason walked.  He compared Beason's physical appearance to the physical characteristics of the person on video.  He also noticed that the robbery suspect's profile and his image running from the store showed the hip and buttocks area rising a bit, which was also similar to Beason.  He pointed this out on the video.

An investigative technician for the San Diego County District Attorney testified about the still shots he created from the surveillance video. He said the video had low pixilation, so details were not always visible or readable.  He explained that he selected images that best displayed the

4

robber's left neck area, but even after using extreme settings, nothing noteworthy popped out to him in the perpetrator's neck area.

ECF No. 11-8 at 2–5.

## II. Procedural Background

On June 12, 2018, a jury convicted Petitioner of robbery but found the allegation that he used a firearm in the commission of the crime not true. ECF No. 11-3 at 226. Following his conviction, Petitioner sought to have his attorney discharged and have substitute counsel appointed. ECF No. 26 at 3. A *Marsden* hearing on the matter was held on June 13, 2018, and the Court denied Petitioner's request because he did not make a showing that there was a breakdown in the attorney-client relationship.[1] *See generally* ECF No. 26. At sentencing, the trial court imposed a sentence of 16 years plus 25 years to life with the possibility of parole. ECF No. 11-3 at 360–61.

On September 18, 2019, Petitioner timely appealed. ECF No. 11-5. On July 1, 2020, the California Court of Appeal affirmed the judgment but remanded for resentencing to address changes in the Penal Code. ECF No. 11-8 at 1–2. On Petitioner filed a petition for review with the California Supreme Court. ECF No. 11-9. On September 9, 2020, the California Supreme Court denied the petition without comment or citation to authority. ECF No. 5 at 39.

On August 20, 2021, Petitioner filed a petition for writ of habeas corpus in the Superior Court of San Diego. ECF No. 11-10. On September 3, 2021, The San Diego Superior Court denied the Petition. ECF No. 11-11. On October 26, 2021, Petitioner filed another habeas petition raising the same claims before the California Court of Appeal. ECF No. 11-12. On November 2, 2021, the Court of Appeal denied the habeas

---

[1] When a defendant makes a claim of ineffective assistance of counsel, a *Marsden* hearing provides the defendant with an opportunity to support his claim with testimony and evidence. *People v. Marsden*, 2 Cal. 3d 118, 125–26 (1970).

petition on November 2, 2021.  ECF No. 11-14.  On November 9, 2021, Petitioner filed a petition for review with the California Supreme Court.  ECF No. 11-15.  On December 15, 2021, the California Supreme Court denied the petition.  ECF No. 5 at 66.

On December 8, 2021, Petitioner filed a petition for writ of habeas corpus and a stay and abey motion in this Court.  ECF No. 1.  On January 14, 2022, Petitioner filed an amended petition following the California Supreme Court's denial of his state habeas petition.  ECF No. 5.  Therefore, on March 7, 2022, the Court denied the motion for stay and abeyance as moot, as the amended petition acknowledged that Petitioner had exhausted his ineffective assistance of counsel claim in state court.  ECF No. 7; ECF No. 5 at 59–66.

## SCOPE OF REVIEW

### I.    Report and Recommendation Standard of Review

Where objections to the magistrate judge's findings are made, the Court reviews the magistrate judge's report and recommendation under de novo review.  28 U.S.C. § 636(b)(1)(C).  Here, Petitioner objected to the Report and Recommendation ("R&R") in its entirety.  ECF No. 28.  The Court accordingly reviews de novo.  The Court "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

A federal court uses the decision of the highest state court to make its habeas determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Where no reasoned decision from the highest state court exists, the federal court must "look through" to the last reasoned state court decision and presume that it provides the basis for the highest state court's denial of a claim.  *Id.* at 805–06.

### II.    Federal Habeas Relief and AEDPA

Federal habeas relief is available to an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  It is outside the jurisdiction of a federal habeas court to "reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief only where a state court's decision on the merits was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented[.]"  28 U.S.C. § 2254(d).  Even a petitioner who meets the AEDPA standard must establish that "law and justice require" relief under the Supreme Court's precedents on "the appropriate exercise of equitable discretion[.]"  *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (citing 28 U.S.C. § 2243).

The bases for a successful habeas claim are limited to constitutional violations of "clearly established Federal law, as determined by the Supreme Court of the United States[,]" at the time the state court renders its decision.  28 U.S.C. § 2254(d).  Where the Supreme Court has not yet addressed an issue, Circuit precedent may not serve to create established federal law.  *Holley v. Yarborough*, 568 F.3d 1091, 1097 (9th Cir. 2009).

The AEDPA "contrary to" prong permits a federal court to grant habeas relief where the state court applied a different rule than as established by the Supreme Court, or where the state court decided a case differently than the Supreme Court based on materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The AEDPA "unreasonable application" prong permits a federal court to grant habeas relief where the state court's application of "clearly established federal law" is objectively unreasonable.  *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409–11 (2000)).  Where the state court correctly identified the governing principle, but unreasonably applied it to the facts of the case, the "unreasonable application" prong permits a federal court to grant habeas relief.  *Bell*, 535

1  U.S. at 694.  However, an erroneous or incorrect state court application of federal law is

2  insufficient to meet the objectively unreasonable standard.  *Williams*, 529 U.S. at 411.

3  <center>**DISCUSSION**</center>

4      Petitioner raises six separate grounds for relief: (1) the trial court abused its

5  discretion by admitting irrelevant evidence; (2) the trial court erroneously presented

6  improper lay opinion testimony; (3) the combined trial errors identified are cumulatively

7  prejudicial, violating Petitioner's due process right; (4) Beason's convictions were a

8  fundamental miscarriage of justice; (5) trial counsels' failure to investigate and present an

9  alibi defense, and direction that Beason not testify, rose to the level of ineffective

10  assistance of counsel; and (6) Beason claims actual innocence based on alleged new

11  evidence.  ECF No. 5 at 18.  The Court considers each claim in turn.

12  **I.  Evidentiary Claims**

13      The Court will first consider the three evidentiary grounds for relief.  Petitioner

14  contends that the trial court improperly allowed inadmissible physical evidence and lay

15  opinion testimony, and that each of these errors alone warrants relief.  ECF No. 5 at 13–

16  25.  First, Petitioner contends that the trial court erred in admitting the physical evidence

17  obtained from Petitioner's car—a towel and a pair of binoculars—because the evidence

18  was irrelevant and prejudicial.  *Id.* at 13.  Second, Petitioner argues that the trial court

19  erred in admitting a law enforcement officer's lay opinion testimony that Petitioner's gait

20  matched the robbery suspect's gait.  *Id.* at 20.  Petitioner asserts that the state appellate

21  court decision affirming the admission of this evidence was objectively unreasonable.  *Id.*

22  at 19, 25.  Even if neither of these evidentiary errors warrant relief on their own,

23  Petitioner argues that they were cumulatively prejudicial and therefore violate due

24  process.  *Id.* at 25–27.

25      The Court will first consider the individual evidentiary claims, and then it will

26  address the cumulative error claim.

1         **A. Individual Evidentiary Claims**

2             **i.    Governing Law**

3       Federal habeas courts cannot review a state court's decision on state evidence law.

4  *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Holley*, 568 F.3d at 1101

5  ("[s]imple errors of state law do not warrant federal habeas relief"); *see Estelle*, 502 U.S.

6  at 67–68 (ruling that a state court's incorrect interpretation of its evidence code did not

7  warrant habeas relief).  Because the Supreme Court has not ruled as to whether the

8  admission of irrelevant or overtly prejudicial evidence constitutes a due process violation,

9  this Court lacks the power to grant habeas relief based on such claims.  *See Holley*, 568

10  F.3d at 1101.

11      Even if such evidence claims are not foreclosed by AEDPA's restrictive standards,

12  the Court will only grant relief if an evidentiary error rendered the trial so arbitrary and

13  fundamentally unfair that it violated due process.  *Walters v. Maass*, 45 F.3d 1355, 1357

14  (9th Cir. 1995); *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (holding that admission of

15  prejudicial evidence constitutes a due process violation where it renders the trial

16  fundamentally unfair).  "Only if there are no permissible inferences the jury may draw

17  from the evidence can its admission violate due process.  Even then, the evidence must

18  'be of such quality as necessarily prevents a fair trial.'" *Jammal v. Van De Kamp*, 926 F.

19  2d 918, 920 (9th Cir. 1991) (emphasis omitted) (quoting *Kealohapauole v. Shimoda*, 800

20  F.2d 1463, 1465 (9th Cir. 1986)).

21         **ii.    Analysis – Admission of Physical Evidence**

22      Petitioner first challenges the state appellate court's decision that the trial court did

23  not abuse its discretion by admitting irrelevant and prejudicial physical evidence.  ECF

24  No. 5 at 13–20.  Petitioner argues that the trial court's admission of the towel and

25  binoculars found in Petitioner's car was irrelevant and inherently speculative.  *Id.* at 15–

26  16.  And Petitioner contends that the admission of this evidence was prejudicial, as there

27

28

1    is a reasonable probability that jurors used this physical evidence to overcome a

2    reasonable doubt with speculation. *Id.* at 18–19. Therefore, Petitioner claims that the

3    admission of the evidence was objectively unreasonable. *Id.*

4    Respondent counters that the state appellate court reasonably rejected Petitioner's

5    claims of evidentiary error. ECF No. 11-1 at 27. Respondent further contends that

6    Petitioner does not claim that the state court's ruling violates clearly established federal

7    law as required by AEDPA, and that this failure is fatal to Petitioner's claim. *Id.* at 27–

8    28.

9    The state appellate court found that the trial court did not abuse its discretion in

10    admitting either the towel or binoculars:

11    Only relevant evidence is admissible. (Evid. Code, § 350; <u>People v.</u>
12    <u>Babbitt</u> (1988) 45 Cal.3d 660, 681.) Evidence Code section 210 defines
     relevant evidence as that which has "any tendency in reason to prove or
13    disprove any disputed fact that is of consequence to the determination of the
     action." Evidence is relevant if it tends "logically, naturally, and by
14    reasonable inference" to establish material facts such as identity, intent, or
     motive. (<u>People v. Daniels</u> (1991) 52 Cal.3d 815, 856 (<u>Daniels</u>).) A trial
15    court has broad discretion to determine the relevance of evidence. (<u>Babbitt</u>,
     at p. 681.) We review the trial court's decision on admitting evidence for an
16    abuse of discretion. (<u>People v. Merriman</u> (2014) 60 Cal.4th 1, 58; <u>People v.</u>
17    <u>Hall</u> (2010) 187 Cal.App.4th 282, 294.)

18

19    We do not believe the court abused its discretion in admitting either
     item. The robber's identity was the main issue in this case. Though Beason
20    did not identify a different suspect, he did argue he was not the robber. The
     defense attorney pointed out that owning a bright green towel would not by
21    itself establish identity, and she expressed concern that a jury would
22    speculate that just because the defendant owned a green towel, the same
     color as the one found at the scene, the defendant must be the robber.
23    However, there was some probative value in the similarities between the
     towels and how they were used. The towel in Beason's vehicle was wrapped
24    around the gun contained in the satchel in the center console of his vehicle.[2]
25    During the robbery, the suspect similarly held the gun wrapped in a towel.
26    The prosecutor explained that carrying a gun in that way is not common,

27

28

10

proper, or legal. Not only was the gun protected in the same manner, by using the same type of material in the same way, but it also contributed to preventing of DNA from coming into contact with the weapon, both in the vehicle and on the weapon used during the robbery. The inclusion of the towel found in the vehicle did not abuse discretion because it was relevant, as it tended to show, by reasonable inference, material facts. (See Evid. Code, § 210; Daniels, supra, 52 Cal.3d at p. 856.)

[FN2: In his opening brief, Beason implies that the towel from the vehicle was improperly admitted because "the provenance of the towel was ambiguous." Detective Padilla testified he saw the butt of the gun in the satchel and removed it to secure it, but he did not notice or look for anything else in the bag at the time. The items taken from the defendant's vehicle were collected and placed in paper bags, secured in a police vehicle trunk, taken to headquarters, and photographed. Items photographed together were found together, including the satchel, the green towel, and the handgun. Although the detective did not see the towel in the satchel with the gun when he removed the gun, he later learned it was recovered from inside the same satchel.]

When the court admitted the binoculars that were recovered from Beason's vehicle, defense counsel questioned their relevance. She noted the binoculars were recovered a couple months after the robbery, were not illegal to possess, and were useful for legitimate purposes, including sporting events. She contended their existence was not relevant because it did not connect the vehicle to the scene of the robbery, and there was no evidence that the store was cased before it was robbed. There was, however, evidence the robbery was planned because the perpetrator entered the market moments after it opened for the day, carrying an empty gas can as a ruse. The binoculars, taken in conjunction with other items in the vehicle, including the gun (whether it is considered wrapped in a towel or not), and a black hoodie sweatshirt, tends to establish the defendant carries with him tools consistent with those of the perpetrator here. As to the issue of whether the introduction of binoculars, which are not illegal to own or carry, caused any prejudice (Evid. Code, § 352), as the trial court noted, the defense could point out lawful uses for binoculars on cross-examination. Thus, their probative value outweighed any undue prejudice. (See ibid.) We cannot say that admitting this evidence was an abuse of discretion.

3:21-cv-02052-GPC-MSB

1    ECF No. 11-8 at 6–9.

2    In short, Petitioner challenges the state court's admission of evidence under state

3    law principles.  In this realm, the Court is bound by the Ninth Circuit's holding in *Holley*.

4    There, the Ninth Circuit denied the petitioner's due process claims despite the admission

5    of evidence that was "both irrelevant and highly likely to be prejudicial, with a

6    substantial and injurious effect on the jury's verdict."  *Holley*, 568 F.3d at 1101 n.2.  The

7    court reasoned that the Supreme Court "has not yet made a clear ruling that admission of

8    irrelevant or overtly prejudicial evidence constitutes a due process violation[,]" and that it

9    therefore could not grant federal habeas relief on the raised evidentiary grounds.  *Id.* at

10   1101.  The court reasoned that, absent "'clearly established Federal law,' as laid out by

11   the Supreme Court[,]" it could not conclude that the state court's ruling was an

12   "unreasonable application" under AEDPA.  *Id.* (citing 28 U.S.C. § 2254(d)).

13   Petitioner does not explain why the Court should stray from *Holley* here.

14   Petitioner does not cite—and the Court has not found—any Supreme Court precedent

15   addressing whether the admission of speculative or irrelevant evidence constitutes a due

16   process violation.  *See id.* at 1101.  While Petitioner cites *Estelle* to argue that the

17   admitted evidence "so infected the entire trial that the resulting conviction violates due

18   process," ECF No. 5 at 18 (citing Estelle, 502 U.S. at 71-72), that pre-AEDPA decision

19   does not address AEDPA's requirement of clearly established federal law. What is more,

20   the Ninth Circuit, and district courts within the Ninth Circuit, have consistently denied

21   habeas relief where petitioners claim that the admission of irrelevant, speculative, and

22   prejudicial physical evidence constitutes a due process violation.  *See e.g. Ruiz v. Barnes*,

23   731 F. App'x. 616, 617 (9th Cir. 2019) (rejecting petitioner's claim that the admission of

24   physical handgun evidence violated due process because, as *Holley* held, there is no

25   clearly established Supreme Court precedent on the issue); *Martines v. Hartley*, 2010 WL

26   3293699, at *7 (E.D. Cal. Aug. 19, 2010) (denying a due process violation claim based

27

28

on the admission of irrelevant gun evidence because of a lack of clearly established federal law on the issue); *Dyleski v. Grounds*, 2016 WL 3194997, at *23 (N.D. Cal. June 9, 2016) ("No Supreme Court ruling clearly establishes that the admission of prejudicial or irrelevant evidence is a violation of due process sufficient for habeas relief under AEDPA."). Accordingly, *Holley* dooms Petitioner's evidentiary claims.

Even if Petitioner's claim was feasible under AEDPA, the admission of the evidence did not violate due process because the state appellate court reasonably found that there are permissible inferences the jury may have drawn from the evidence. *Jammal*, 926 F. 2d at 920. First, the Court considers the admission of the towel that was found in Petitioner's car. During the robbery, the suspect held a gun wrapped in a towel. ECF No. 11-4 at 171. A similar towel was recovered from the scene of the robbery; this towel contained Petitioner's DNA. *Id.* at 371–77. Two months after the robbery, law enforcement arrested Petitioner and searched his car, where they found a gun wrapped in a towel similar to the one recovered from the scene of the crime. ECF No. 11-4 at 254–55.

Given that the suspect's identity was the only issue at trial, the jury could have permissibly inferred that the towel connected Petitioner to the robbery. The towel was wrapped around a gun, just like the way the suspect carried the gun when committing the robbery. And it was the same color as the towel recovered at the scene. *Id.* at 254–55. This inference is especially appropriate considering the prosecution's theory that this manner of carrying guns is both unusual and illegal, as it prevents the transfer of DNA to the gun. *See id.* at 568–69. While Petitioner contends that the towels were different brands, fabrics, and sizes, these facts do not make the inferences the jury could have drawn impermissible. While these facts may invite different inferences from the evidence, the question is whether there are *any* permissible inferences the jury could draw; here, there are. Therefore, the admission of the towel into evidence did not violate

13

1    Petitioner's due process rights. *See Edwards v. Miller*, 2016 WL 3092088, at *15-16

2    (S.D. Cal. June 2, 2016) ("[b]ecause there were various permissible inferences the jury

3    could have drawn from the DNA evidence, Petitioner has not demonstrated that the

4    admittance of this evidence violated his due process rights").

5        The admission of the binoculars did not violate Petitioner's right to due process,

6    either. The prosecution's theory was that the robbery was planned. *See* ECF No. 11-4 at

7    515. The prosecution contended that the binoculars supported this theory. *Id.* at 243.

8    When viewed in combination with other evidence supporting this theory—the suspect

9    entering the convenience store moments after it opened and carrying a gas tank as a ruse,

10    the gun and towel found in Petitioner's car, and the clothing found at Petitioner's house

11    matching the clothing of the suspect including a hoodie, black pants, shoes, and

12    motorcycle gloves—the jury can reasonably and permissibly infer that Petitioner

13    committed a planned robbery. ECF No. 11-8 at 8–15.

14        Petitioner argued that the binoculars were irrelevant because they were found in

15    the car two months after the robbery, there was no evidence that the store was cased

16    before it was robbed, and there is nothing unlawful about possessing binoculars. ECF

17    No. 5 at 17–18. The jury considered trial counsel's argument against the prosecution's

18    theory that the robbery was planned, and in doing so, considered the weight of the

19    evidence in support of the theory. ECF No. 11-4 at 553. And Petitioner cites no federal

20    case law indicating that the "planned robbery" theory is impermissible. Petitioner's

21    argument therefore fails.

22        Accordingly, Petitioner is not entitled to habeas relief based on the admission of

23    the towel and binoculars.

24    //

25    //

26    //

27

28

### iii.    Analysis – Admission of Lay Opinion Testimony

Petitioner next argues that the trial court erred in admitting Detective Padilla's lay opinion testimony.  ECF No. 5 at 20.  Specifically, Petitioner takes issue with the following testimony at trial:

> Detective Padilla testified he had an opportunity to watch Beason walk during their interactions.  He explained that when the suspect in the robbery video took footsteps forward, his knees rotated inward a bit, and he noticed Beason did the same thing when Beason walked.  He compared Beason's physical appearance to the physical characteristics of the person on video.
>
> ECF No. 11-8 at 5; *see* ECF No. 5 at 20–21.

Petitioner contends that Detective Padilla's lay opinion testimony comparing Petitioner's gait with the suspect's gait went beyond merely describing Petitioner's appearance and therefore required an expert witness in kinesiology.  ECF No. 5 at 20-24.  Petitioner argues that there was "room for a reasonable doubt" in the case, and that the prosecutor encouraged the jury to use this testimony to overcome any reasonable doubt.  *Id.* at 24.  During its deliberations, the jury asked the Court whether the jurors could consider their own observations of Beason in their deliberations, which, Petitioner argues, shows "that at least one juror relied on Padilla's lay opinion to overcome a reasonable doubt[.]"  *Id.* at 24-25.  Petitioner therefore concludes that the testimony was prejudicial, and that the state appellate court's decision upholding the admission of testimony was objectively unreasonable.  *Id.* at 25.

The state appellate court reviewed the admission of the lay opinion testimony for abuse of discretion.  ECF No. 11-8 at 10–11.  In a well-reasoned analysis, the state appellate court rejected Petitioner's argument:

> Lay witness testimony is admissible if it is rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800.) Admission of lay witness testimony falls within a court's discretion (*People v. Bradley* (2012) 208 Cal.App.4th 64, 83), and "Court of Appeal decisions have long upheld

3:21-cv-02052-GPC-MSB

admission of testimony identifying defendants in surveillance footage or photographs." (*People v. Leon* (2015) 61 Cal.4th 569, 601 (*Leon*).)

"[L]ay opinion testimony concerning the identity of a robber portrayed in a surveillance camera photo of a robbery is admissible where the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken and his testimony aids the trier of fact in determining the crucial identity issue." (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513 (*Ingle*).) "Where the photo is unclear, or the defendant's appearance has changed between the time the crime occurred and the time of trial, or where for any reason the surveillance photo is not conclusive on the identity issue, the opinion testimony of those persons having knowledge based upon their own perceptions (Evid. Code, § 800, subd. (a)) of defendant's appearance at or before the time the crime occurred is admissible on the issue of identity, and such evidence does not usurp or improperly invade the province of the trier of fact." (*Id.* at p. 513.)

There are two requirements for lay opinions regarding identification from surveillance video: (1) the witness must have personal knowledge of the defendant's appearance; and (2) the testimony must aid in determining a crucial identity issue. (*People v. Mixon* (1982) 129 Cal.App.3d 118, 128 (*Mixon*).)  However, personal knowledge of a defendant's appearance does not have to be based on contact occurring before the crime; it can be based on contact with the defendant around the time of the crime.  (*Leon*, *supra*, 61 Cal.4th at pp. 600-601 [familiar with defendant beginning at time of arrest for target crime]; *Ingle*, *supra*, 178 Cal.App.3d at p. 514 [permitting victim's opinion testimony that the person portrayed as the robber was the defendant].) Questions about the extent of a witness's familiarity with the defendant's appearance go to the weight of the testimony, not its admissibility.  (*Leon*, at p. 601.)

We review the admission of lay opinion testimony regarding the identity of a person on video under an abuse of discretion standard. (*Leon*, *supra*, 61 Cal.4th at p. 600.) We will not disturb the decision "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

We are not persuaded that expert testimony from a physical therapist or kinesiologist is required to describe how a person walks.[3] For example, in *Mixon, supra,* 129 Cal.App.3d at p. 131, and *People v. Perry* (1976) 60 Cal.App.3d 608, 613, the courts permitted testimony by police officers who were familiar with the defendants prior to the crimes. And in *Ingle*, the court permitted testimony from a lay witness, the victim, who viewed the defendant's physical features during the robbery. (*Ingle*, *supra*, 178 Cal.App.3d at p. 513.) In *Ingle* the court explained the testimony about identity did not invade the province of the trier of fact. (*Ibid.*)

[FN3: Notably, even Beason comments in his opening brief that if "a lay witness pointed out distinct similarities in the way Beason and the robber walked, there could be no objection." Detective Padilla's testimony was offered as lay opinion, not as expert testimony, on this point.]

Although the detective here did not know Beason before the arrest for robbery, he did observe Beason in person within a couple months of the crime. Detective Padilla's testimony about Beason's gait occurred in the context of a broader discussion of Beason's physical appearance and how that compared to the robber's physical appearance. He did not claim any expertise in examining a person's gait; he merely described what he observed. This testimony was helpful because his familiarity with Beason's features could aid in identifying the subject in the surveillance video. Additionally, the surveillance footage was, as the defense attorney described, grainy and jerky; thus, witness testimony could aid the jury as to the identity of the robber.

Moreover, the court instructed the jury that it was not required to accept opinion testimony, and that it could give opinion testimony the weight to which it felt the opinion was entitled. (CALCRIM No. 226; CALCRIM No. 333.)

Beason argues the inclusion of this testimony was prejudicially erroneous because the prosecutor encouraged the jury to use the testimony to overcome reasonable doubt. Beason further argues the significance of the testimony is inferred from a jury question; jurors asked, "Are we allowed to consider our own visualization/observation of Mr. Beason from inside/outside the courtroom (example, in the hallway) in our discussion." When the attorneys appeared the next morning, the court explained that it

believed the jury had a verdict. Nevertheless, the court sent its response to the jury, commenting it would be speculative to know what visualization or observation the jury was referencing, and noting the jury could ask further questions. The court's written response directed the jury to "[p]lease see CALCRIM 222[,]," which tells jurors they "must disregard anything [they] saw or heard when the court was not in session, even if it was done or said by one of the parties or witnesses." (See CALCRIM No. 222.) Shortly thereafter, the jury returned its guilty verdict for robbery and found the allegation that Beason personally and intentionally used a handgun in the commission of the robbery to be untrue.

Beason argues there is no way to know whether the jurors wanted to use their own observations of Beason to confirm or refute Detective Padilla's observation, but the question suggests the jury was considering this testimony, making it reasonably likely at least one juror relied on the detective's opinion. We disagree.

Although the jury indicated it reached a verdict before the court sent its answer to their question, it had an opportunity to review the court's response to its question before presenting the verdict to the court. Thus, we cannot read into this exchange the foundation for the jury's ultimate guilty verdict. Even were we to conclude there was error in admitting this testimony, we would nonetheless conclude any error was harmless, as we discuss *post*.

ECF No. 11-8 at 9–13.

Petitioner now challenges the state appellate court's that the admission of Detective Padilla's lay opinion testimony did not constitute an abuse of discretion as objectively unreasonable. *Id.* at 9–13. Again, because the admission of lay opinion testimony is purely an issue of state law, the Court cannot disturb this finding. *See Holley*, 568 F.3d at 1101 ("[s]imple errors of state law do not warrant federal habeas relief"). For the same reasons the Court articulated regarding the physical evidence, *see supra* "Discussion" Section I.B, *Holley* forecloses Petitioner's claim under AEDPA. And even if *Holley* did not defeat Petitioner's claim, the admission of lay opinion testimony would only violate due process, and therefore warrant federal habeas relief, if there are

18

1    "no permissible inferences the jury may draw from the evidence[.]" *Jammal*, 926 F.2d at

2    920; *see also Armstrong v. Lizarraga*, 2019 WL 3253790, at *9-10 (E.D. Cal. July 19,

3    2019) (finding that the state court's admission of officer's lay opinion testimony did not

4    violate clearly established federal law, but nonetheless considering whether the

5    evidentiary ruling violated due process);

6           The Court finds that there is a permissible inference that the jury could draw from

7    Detective Padilla's lay opinion testimony regarding Petitioner's gait.  Again, the only

8    issue at trial was the identity of the robber.  Detective Padilla testified that, based on his

9    observations, there were distinct similarities between the way Petitioner walked and the

10   way the suspect walked: their knees came "inward a bit" when they walked and their "hip

11   and buttocks area rise[] a bit."  ECF No. 11-4 at 270.  This testimony is directly relevant

12   to the issue of whether Petitioner matched the suspect.  And the trial court instructed the

13   jury that it was entitled to give witness' opinions whatever weight it found appropriate.

14   *Id.* at 509; *see White v. Arnold*, 2019 WL 3457999, at *12 ("[t]he jury was instructed

15   regarding the assessment of witness credibility and there is no basis on this record from

16   which it can be inferred the jury disregarded the instruction") (internal citations omitted).

17   Therefore, irrespective of whether this evidence is proper lay opinion testimony, it clearly

18   leads to a permissible inference that Petitioner is the robbery suspect identified in the

19   surveillance video.[2]  Therefore, the admission of the testimony does not rise to the level

20   of a due process violation.  *See Fair v. Atchley*, 2023 WL 4551870, at *8 (E.D. Cal. July

21   14, 2023) (finding that admission of officer's identification testimony did not violate due

22   process where "[t]he key issue at trial was identification of the shooter" and the officer's

23

24

25

26   [2] Without opining on the admissibility of the testimony, the Court notes that the state court reasonably
     found that any error in admitting the testimony was harmless given the ample other evidence tending to

27   establish that Mr. Beason was the robber.  *See* ECF No. 11-8 at 13–16.

28                                                           3:21-cv-02052-GPC-MSB

1    identification testimony based on his own contacts with the petitioner "allowed the jury

2    to draw the permissible inference that petitioner was the shooter").

3         Therefore, Petitioner's claim that the admission of the lay opinion testimony

4    warrants federal habeas relief fails.

5    **B. Cumulative Error**

6         **i.   Governing Law**

7         The cumulative effect of multiple trial errors can violate due process, even where

8    no single error is sufficient to independently warrant reversal. *Parle v. Runnels*, 505 F.3d

9    922, 927 (9th Cir. 2007) (relying on *Chambers*, 410 U.S. 284, 302–03 (1973)). "[T]he

10   combined effect of multiple trial court errors violates due process where it renders the

11   resulting criminal trial fundamentally unfair." *Parle*, 505 F.3d at 927–33 (finding

12   cumulative error where the "unique symmetry" of errors amplifies the prejudice caused

13   by the other). However, where "no error of constitutional magnitude occurred, no

14   cumulative prejudice is possible." *Hayes v. Ayers*, 632 F.3d 500, 525 (9th Cir. 2001).[3]

15        **ii.   Analysis**

16        Petitioner contends that the above-mentioned evidentiary errors, which relate

17   directly to the only contested issue, combine to violate his due process rights. ECF No. 5

18   at 26. Respondent asserts that, because Petitioner has not established that the state court

19

20   _____

21   [3] The R&R correctly cites recent case law in this District that has called into question whether there is clearly established federal law regarding cumulative error. *See Sanchez v. McDowell*, 648 F. Supp. 3d

22   1241 (S.D. Cal. 2023). In *Sanchez*, the Court reasoned that *Parle* and its progeny erroneously treated *Chambers* as establishing a general principle of federal law. *See Parle*, 505 F.3d at 927; *see also*

23   *Chambers*, 410 U.S. at 302–303. Rather, in *Chambers*, the Court refused to establish a new principle of constitutional law and limited its findings to the facts and circumstances of the case. *Chambers*, 410

24   U.S. at 302–303. While the Supreme Court has neither overruled nor endorsed *Parle*, it has criticized the Ninth Circuit for framing narrow Supreme Court holdings with a high level of generality to justify

25   habeas relief. *Sanchez*, 648 F. Supp. 3d at 1261. Notwithstanding this caveat in the case law, for the reasons set forth below in Section I.B.ii, the Court need not decide whether the cumulative error doctrine

26   is clearly established federal law, because Petitioner's claim fails anyways.

27

28                     3:21-cv-02052-GPC-MSB

1    erred in admitting any of the evidence, "he could not show that he was harmed by

2    cumulative error."  ECF No. 11-1 at 21.

3         The state appellate court rejected Petitioner's cumulative error claim.  ECF No. 11-

4    8 at 13.  The state appellate court reasoned as follows:

5         We have rejected all Beason's claimed errors except those involving
          sentencing, which we address *post*, and which did not render the trial unfair.
6         Because the evidentiary ruling were not erroneous, the cumulative error
          argument necessarily fails. (*People v. McWhorter* (2009) 47 Cal.4th 318,
7         377 [no cumulative effect of error when no error]; *People v. Butler* (2009)
          46 Cal.4th 847, 885 [rejecting cumulative effect claim when court found "no
8         substantial error in any respect"].)

9    ECF No. 11-8 at 13.  The court further reasoned that, even if the evidence was

10   improperly admitted, its admission was not prejudicial because there was ample evidence

11   that otherwise connected Petitioner to the crime.  *Id.* at 13-16.  Therefore, the court held

12   that any error was harmless.  *Id.*

13        Petitioner's cumulative error claim fails.  As discussed above, Petitioner has not

14   identified any evidentiary error made by the state appellate court.  Where no errors are

15   present, any argument that errors combined to violate due process necessarily fails.  *See*

16   *Hayes*, 632 F.3d at 524.  Accordingly, the Court denies Petitioner's cumulative

17   evidentiary error claim.[4]

18

19   **II.    Ineffective Assistance of Counsel**

20        Petitioner also raises an ineffective assistance of counsel ("IAC") claim.  ECF No.

21   5 at 28.[5]  He alleges that his trial counsel failed to investigate his alibi defense.  *Id.* at 30-

22   32.  Petitioner further contends that his trial counsel deprived him of his right to testify by

23

24   _____

25   [4] Further, the Court again notes that the state court reasonably found that any error in admitting the
     testimony was harmless.  *See* ECF No. 11-8 at 13–16.

26   [5] Respondent contends that this claim is untimely, ECF No. 11-1 at 16-18, but, in the interests of
     thoroughness and judicial economy, the Court will nonetheless address the merits of Petitioner's claim.

27

28

1  telling him that he would not testify.  *Id.* at 32-35.  Respondent asserts that the state

2  appellate court's rejection of these arguments was objectively reasonable, as Petitioner's

3  trial counsel was unaware of any alibi defense and Petitioner waived his right to testify.

4  ECF No. 11-1 at 16-20.  Finally, Petitioner argues that the cumulative effect of both of

5  counsel's alleged errors resulted in prejudice requiring reversal.  ECF No. 5 at 35.  The

6  Court takes these claims in turn.

7      **A. Governing Law – IAC**

8      The IAC standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), is

9  "clearly established Federal law, as determined by the Supreme Court of the United

10  States."  *Williams v. Taylor*, 529 U.S. 362, 391 (2000).  In *Strickland*, the Court held that

11  to establish IAC, a petitioner must show (1) that counsel's performance was deficient and

12  (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

13      To establish deficient performance, Petitioner "must show that counsel's

14  representation fell below an objective standard of reasonableness."  *Id.* at 688.  "This

15  requires showing that counsel made errors so serious that counsel was not functioning as

16  the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Courts

17  must consider all the circumstances in determining whether counsel's assistance was

18  reasonable.  *Id.* at 688.

19      To establish prejudice, Petitioner must show that "there is a reasonable probability

20  that, but for counsel's unprofessional errors, the result of the proceeding would have been

21  different.  A reasonable probability is a probability sufficient to undermine confidence in

22  the outcome."  *Id.* at 694; *see Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993) ("[s]heer

23  outcome determination, however, was not sufficient to make out a claim under the Sixth

24  Amendment").  "The likelihood of a different result must be substantial, not just

25  conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466

26  U.S. at 693).

27

28

3:21-cv-02052-GPC-MSB

1    Generally, *Strickland* requires that "[j]udicial scrutiny of counsel's performance …

2  be highly deferential." *Strickland*, 466 U.S. at 689.  "Because of the difficulties inherent

3  in making the evaluation, a court must indulge a strong presumption that counsel's

4  conduct falls within the wide range of reasonable professional assistance." *Id.*  Further, a

5  habeas court's review of a state court decision on an ineffective assistance of counsel

6  claim is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Cullen*

7  *v. Pinholster*, 563 U.S. 170, 190 (2011) ("We take a 'highly deferential' look at counsel's

8  performance through the 'deferential lens of § 2254(d)'").  In reviewing a state court

9  ineffective assistance of counsel decision, "[t]he pivotal question is whether the state

10  court's application of the *Strickland* standard was unreasonable.  This is different from

11  asking whether defense counsel's performance fell below *Strickland*'s standard."

12  *Harrington*, 562 U.S. at 101.  It is "a substantially higher threshold." *Knowles*, 556 U.S.

13  at 123.[6]

14    **B. Failure to Investigate Alibi Defense**

15    First, Petitioner alleges that his trial counsel failed to investigate and present his

16  alibi defense at trial.  ECF No. 5 at 30–32.  The Court must determine whether the state

17

18

19

_____

20  [6] The Court notes that Petitioner does not make arguments under the AEDPA standard.  Instead, Petitioner argues that the *Strickland* standard has been satisfied.  *See, e.g.,* ECF No. 5 at 32.  The Court,

21  however, will address the arguments under the AEDPA standard.  Further, Petitioner does not contest the state court's finding that his alibi defense is procedurally barred.  ECF No. 11-14 at 4–5.  In the

22  interests of efficiency, the Court will nonetheless address the merits of Petitioner's alibi IAC claim.  *Cf. Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[A]ppeals courts are empowered to, and in

23  some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.")

24  (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("It is wasteful of both our resources and that of the litigants to remand to the district court a case in which that court improperly found a procedural bar,

25  if the ultimate dismissal of the petition is a foregone conclusion."); *cf.* 28 U.S.C. § 2254 ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

26  applicant to exhaust the remedies available in the courts of the State").

27

28                                                                    3:21-cv-02052-GPC-MSB

court's application of the *Strickland* standard was unreasonable. In addressing the IAC claims, the state court reasoned as follows:

> The claim of ineffective assistance also fails to state a prima facie case for habeas corpus relief. A habeas corpus petitioner asserting such a claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" and "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 690, 694; see *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218 [adopting *Strickland* standard as California law].) "The decision whether to call certain witnesses is a 'matter[] of trial tactics and strategy which a reviewing court generally may not second-guess.' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 989.) In response to Beason's inquiry about the failure to investigate and present the alibi defense, counsel responded, "Beason never told me he had an alibi. I also spoke with his wife on multiple occasions, and she never said she (or any family member) could provide an alibi. Had they told me this, I would have investigated the claim and potentially called her (or others) as a witness." Even had counsel investigated the alibi defense, the obvious credibility problems with the witnesses reasonably could have led to a decision not to call them. On this record, Beason has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland*, at p. 689.) Furthermore, as discussed in connection with the new evidence claim, it is not reasonably probable the jury would have reached a different verdict on the robbery charge had counsel put on the alibi defense. Beason thus has not met his pleading burden to "show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." (*Id.* at p. 687.)

ECF No. 11-14 at 5–6.

In reaching its conclusion, the state court accepted trial counsel's statement that Petitioner and his family "never told [her that] he had an alibi." *See id.* (quoting ECF No. 11-13 at 49). As the R&R correctly notes, the state court therefore made a factual finding that Petitioner's trial counsel was not aware of the alibi defense. ECF No. 27 at 29; *see Blaylock v. Burt*, 2014 WL 1329001, at *6 (E.D. Mich. Apr. 2, 2014) (finding the state court's "determination that Petitioner did not apprise his trial counsel of his alibi defense"

24

1    to be a factual determination).  Under AEDPA, the state court's factual findings "are

2    presumed correct absent clear and convincing evidence to the contrary[.]"  *Miller-El v.*

3    *Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)); *cf. Lundgren v.*

4    *Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) ("The presumption of correctness [set forth

5    in 28 U.S.C. § 2254(e)(1)] also attaches to the factual findings of a state appellate court

6    based on the state trial record.").  Accordingly, the questions before the Court are

7    whether Petitioner presents clear and convincing evidence that his trial counsel was

8    aware of the alibi defense, and if he does present such evidence, whether his trial counsel

9    subsequently failed to investigate the alibi defense.

10        Petitioner puts forth three declarations to support the existence of an alibi defense:

11    (1) the declaration of Tamika Beason, his wife; (2) the declaration of Tracey Lacey, his

12    stepson; and (3) his own declaration.  *See* ECF No. 11-13 at 3-8.  Tamika Beason's

13    declaration states that, on an unspecified date, she "did inform [trial counsel] about

14    Marlon being asleep that day at 5AM when [she] left for work," but trial counsel told her

15    "not [to] worry about that[.]"  *Id.* at 3.  Petitioner's own declaration states that, on an

16    unspecified date, he "told [trial counsel] about [his] alibi defense being home with

17    Tamika and Tracey that day and being zonked out on [his] medication," but she

18    repeatedly told him he has no say in how the case is fought.  *Id.* at 7.  Tracey Lacey's

19    declaration states that Petitioner took his medications the night before the robbery and

20    left the house at 6:45 a.m. the following morning to take Tamika her keys.  *Id.* at 5.  All

21    three declarations are signed and dated in April 2021, *id.* at 3–8—nearly three years after

22    Petitioner's June 12, 2018 conviction, ECF No. 11-4 at 600–03.

23        While Tamika and Tracey do state that they told Petitioner's trial counsel about the

24    alibi, and provide some details regarding the alleged alibi, they do not amount to "clear

25    and convincing evidence" that would color the state appellate court's factual

26    determination "objectively unreasonable."  *Miller-El*, 537 U.S. at 348.  As a general

27

28

matter, the declarations do not hold much persuasive weight because they are signed and dated nearly three years after Petitioner was convicted of the robbery. *See Meadows v. Biter*, 980 F. Supp. 2d 1148, 1153 (C.D. Cal. 2013) (finding that co-defendant's statement in support of habeas petitioner's actual innocence claim was less persuasive because it came after the co-defendant was convicted and had nothing to lose, and neither Petitioner nor his co-defendant "explained why it was not presented earlier") (citing *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (finding affidavits made years after trial are "not uncommon" and "are to be treated with a fair degree of skepticism") (O'Connor, J., concurring)). And the fact that Petitioner's family members are the individuals coming forward with declarations further detracts from their persuasive weight, as they have a motive to vouch for Petitioner and do not explain why it took nearly three years to come forward with the information. *See Musladin v. Lamarque*, 555 F.3d 830, 850 (9th Cir. 2009) (finding that exclusion of testimony did not violate defendant's due process because it was of "questionable reliability" because the witness was a "close family member"); *Love v. Lewis*, 2014 WL 12963326, at *10 (C.D. Cal. May 9, 2014) (finding undated declarations in support of alibi defense to be unreliable because they came from petitioner's family members and there was an "unexplained delay in coming forward with" the evidence) (collecting cases); *compare Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007) ("[T]his was not a case where only the mother was willing to vouch for a defendant's alibi. To the contrary, witnesses both related and unrelated to Raygoza could have been called."). Therefore, the declarations do not constitute "clear and convincing evidence" that the state court's factual findings were incorrect.

Petitioner further argues that he gave his trial counsel his medication list around April 2018 and that "any professional that knows the strength of those medications taken together could easily conclude Petitioner was knocked out asleep on those medications at the time of the crime." ECF No. 5 at 31; ECF No. 11-13 at 7. Essentially, Petitioner

26

argues that trial counsel should have assumed that there was an alibi defense to investigate based on the medications Petitioner took at the time.  But Petitioner cannot have expected his trial counsel to be on notice of his potential alibi defense based on this information alone.  Trial counsel could not have known whether Petitioner took his medications around the time of the crime or how the medications might affect Petitioner specifically.  Further, there is no immediately recognizable link between Petitioner's medications and his whereabouts at the time of the crime that would have prompted further investigation.  In short, Petitioner failed to provide his trial counsel with the concrete details of an alibi defense.  "A trial counsel cannot be ineffective for failing to raise claims as to which [her] client has neglected to supply the essential underlying facts when those facts are within the client's possession[.]"  *Dooley v. Petsock*, 816 F.2d 885, 890–91 (3d Cir. 1987); *see Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.").  Therefore, Petitioner's proffered evidence is not "clear and convincing evidence" that his trial counsel was aware, or should have been aware of, his alleged alibi defense.

The Court's review of the trial and post-trial records do not reveal any other evidence that suggests trial counsel's knowledge of an alibi defense.  The first time the alibi came up was after trial, at the sentencing hearing.  In describing his trial counsel's alleged inadequacy, Petitioner stated that she did not give a "pinpoint instruction as to alibi regarding my cell phone pings" and that his "wife could have told you I was laying in the bed when she went to work."  ECF No. 11-4 at 649.  But notably, Petitioner did not mention any such alibi defense at the *Marsden* hearing, which took place before the sentencing.  *See* ECF No. 26 (absence).  Further, at the *Marsden* hearing, Petitioner described Tamika—who allegedly knew of his alibi the entire time—meeting with trial

1  counsel and failing to mention an alibi defense. *Id.* at 9. Petitioner's trial counsel also

2  mentioned that Petitioner did not want to call his wife to testify as to the age of his neck

3  tattoo. *Id.* at 16. Petitioner's stance against Tamika testifying is not consistent with the

4  claim that she was aware of an alibi defense. Such inconsistent and sporadic claims are

5  not characteristic of someone whose alibi defense has been ignored.

6  Petitioner also argues that his trial counsel has already admitted that she did not

7  investigate an alibi defense. ECF No. 5 at 30–31 (referencing ECF No. 11-13 at 49

8  ("Had they told me [about an alibi defense], I would have investigated this claim …");

9  ECF No. 26 (trial counsel stating that she only hired investigators to investigate

10 Petitioner's tattoo, DNA, and to conduct online searches)). Respondent does not contest

11 this—and instead focuses on whether trial counsel was even aware of the alibi defense,

12 which the Court addressed above. This is because, of course, the failure to investigate is

13 only relevant if trial counsel was aware of the underlying alibi defense to begin with. *See*

14 *Monroe v. Adams*, 2011 WL 350410, at *9 n. 57 (E.D. Cal. Feb. 2, 2011) ("At Monroe's

15 motion for a new trial, Mr. Healy testified that he did not remember Monroe telling him

16 about a possible alibi for the evening of the robbery. If Monroe never told Mr. Healy

17 about the alibi, then his failure to investigate it would not constitute a deficient

18 performance."); *see also Wiggins v. Smith*, 539 U.S. 510, 527 (2003) ("[i]n assessing the

19 reasonableness of an attorney's investigation, however, a court must consider not only the

20 quantum of evidence already known to counsel, but also whether the known evidence

21 would lead a reasonable attorney to investigate further").

22 Accordingly, the Court will not disturb the state court's factual finding that

23 Petitioner's trial counsel was not aware of an alibi defense. Considering the record

24 before the state court and its factual findings, the court's decision that trial counsel's

25 performance met *Strickland*'s standard was objectively reasonable. Therefore, the Court

26

27

28

3:21-cv-02052-GPC-MSB

need not reach the second prong of the Strickland test. *Strickland*, 466 U.S. 668.[7] Petitioner's IAC claim based on his trial counsel's alleged failure to investigate an alibi defense is DENIED.

## C. Preventing Petitioner From Testifying

Petitioner's second IAC claim is that his trial counsel violated his constitutional right to testify by telling him that he was not testifying. ECF No. 5 at 32–35. In denying the Petitioner's state habeas IAC claim, the state court found that Petitioner has waived this claim because he did not raise it at trial:

> The ineffective assistance claim has also been forfeited to the extent it is based on the failure to call Beason as a witness at trial. "When the record fails to disclose a timely and adequate demand to testify, 'a defendant may not await the outcome of the trial and then seek reversal based on his claim that despite expressing to counsel his desire to testify, he was deprived of that opportunity.' " (*People v. Alcala* (1992) 4 Cal.4th 742, 805-806.) Beason admits counsel advised him not to testify and "repeatedly" told him, "You have no say in how this case is fought, *only whether you're going to testify*." (Italics added.) If Beason wished to testify despite counsel's advice not to do so, he had an obligation to speak up at trial. "A criminal defendant, like any other party to an action, may not sit on his or her rights. Thus, just as a defendant generally may not raise on appeal a claim not raised at trial [citation], a defendant should not be allowed to raise on habeas corpus an issue that could have been presented at trial. If a claim that was forfeited for appeal could nonetheless be raised in a habeas corpus proceeding, the main purpose of the forfeiture rule—to encourage prompt correction of trial errors and thereby avoid unnecessary retrials—would be

---

[7] However, the Court notes that the state court's analysis under the prejudice prong was also reasonable. The state court noted the credibility concerns with the witnesses willing to offer Petitioner's alibi defense. ECF No. 11-14 at 6. Given that the witnesses are Petitioner's immediate family members coming forward several years after his conviction, these concerns are objectively reasonable. *See Jones v. Woodford*, 2008 WL 505230, at *14 (S.D. Cal. Feb. 25, 2008) (finding that petitioner was not prejudiced by counsel's decision not to present alibi defense because the alibi witnesses were all petitioner's family members or friends, and the testimony was inconsistent). The state court also reasonably noted that the weak alibi defense, when weighed against the ample other evidence introduced at trial, would not have changed the outcome at trial. ECF No. 11-14 at 4.

1  defeated." (*In re Seaton* (2004) 34 Cal.4th 193, 199-200.)  Beason's failure
2  to overcome these procedural obstacles to his claim "justifies summary
3  denial without the court's consideration of the merits." (*In re Reno* (2012)
   55 Cal.4th 428, 511.)

4  ECF No. 11-14 at 5.

5      Respondent argues that the state court reasonably concluded that Petitioner waived
6  his right to testify by not stating an intent to testify at trial.  ECF No. 11-1 at 26–29.
7  Further, Respondent argues that Petitioner's belated claim of an intent to testify lacks
8  credibility.  *Id.*

9      A criminal defendant has a constitutional right to testify in his own defense.  *Rock
10 v. Arkansas*, 483 U.S. 44, 49–53 (1987).  "The right is personal," and may only be
11 waived by the defendant.  *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir.
12 1999) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)).  The trial court
13 need not affirmatively inform defendants of their right to testify or ask whether they
14 intend to exercise the right.  *Id.*  "[A] defendant's waiver of the right to testify 'must be
15 knowing and voluntary, [but] it need not be explicit.'"  *Blackmon v. Uttecht*, 828 F.
16 App'x 388, 390 (9th Cir. 2020) (quoting *Pino-Noriega*, 189 F.3d at 1094).  "[W]aiver …
17 may be inferred from the defendant's conduct and is presumed from the defendant's
18 failure to testify or notify the court of his desire to do so."  *Pino-Noriega*, 189 F.3d at
19 1095 (internal citation omitted).  A defendant who wants to take the stand against his
20 lawyer's advice "may do so by insisting on testifying, speaking to the court, or
21 discharging his lawyer."  *Id.* (internal citation omitted).  But if "a defendant remains
22 silent in the face of his attorney's decision not to call him as a witness, he waives the
23 right to testify."  *Id.* (internal citation omitted).

24     The record makes clear that Petitioner was well-aware of his right to testify.  At the
25 *Marsden* hearing, Petitioner stated, "I only have a say-so whether I testify or not."  ECF
26 No. 26 at 7.  Petitioner admits that his trial counsel "repeatedly" told him that he only has

30

1   a say in "whether [he is] going to testify or not." ECF No. 5 at 33. And when Petitioner's

2   current counsel contacted his trial counsel to ask her about this issue, she said that she

3   advised Petitioner of the pros and cons of testifying but made it clear "that the ultimate

4   decision was his." ECF No. 11-13 at 49. However, Petitioner now contends that on June

5   4, 2018, his trial counsel told him that he was not testifying due to his criminal history.

6   ECF No. 5 at 33; ECF No. 11-13 at 7–8. While the Court will not labor over the truth of

7   this allegation, it is worth pointing out that the *Marsden* hearing took place nine days

8   later, on June 13, 2018, and Petitioner did not mention this incident once. *See* ECF No.

9   26 (absence).

10          Irrespective of whether Petitioner intended to testify at trial, the record is

11  abundantly clear that he waived his right to testify. Petitioner does not point the Court to

12  any instance where he insisted on testifying or otherwise informed the Court of his intent

13  to testify. *See* ECF No. 5 at 32–35. And in objecting to the R&R, Petitioner fails to

14  contest that he waived his right. *See* ECF No. 28 at 12–13. After reviewing the record,

15  the Court notes that Petitioner never expressed an intent to testify, including at several

16  key points where he had an opportunity to interject. For instance, at a pretrial hearing,

17  the Court stated that "it's not anticipated the defendant will testify[.]" ECF No. 11-4 at

18  21. Petitioner's trial counsel did not say otherwise, and Petitioner did not take this

19  opportunity to express an intent to testify. *See id.* (absence). When the defense rested its

20  case at trial, Petitioner failed to interject and express a desire to exercise his right to

21  testify. *See* ECF No. 11-4 at 440. Because Petitioner did not "speak to the court about

22  his desire to testify, or attempt to discharge [his trial counsel] as his attorney, he waived

23  his right to testify and may not raise it here." *United States v. Cervantes*, 41 F. App'x

24  918, 923 (9th Cir. 2002); *see Blackmon*, 828 F. App'x at 390 (finding that defendant

25  "assent[ed] to his attorney's tactical decision not to have him testify" because he "sat

26  silent as his counsel rested").

27

28

3:21-cv-02052-GPC-MSB

1    The Court finds that the state court's finding that Petitioner waived his right to

2    testify at trial was objectively reasonable.  Therefore, the Court DENIES Petitioner's IAC

3    claim based on his trial counsel's alleged violation of his right to testify.[8]

4    **D. Cumulative Error**

5    Petitioner briefly argues that the cumulative effect of his trial counsel's errors

6    entitle him to habeas relief.  ECF No. 5 at 34.  "It is true that, although individual errors

7    may not rise to the level of a constitutional violation, a collection of errors might violate a

8    defendant's constitutional rights."  *Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004).

9    But Petitioner has not shown that his trial counsel's performance was deficient in any

10    respect.  Therefore, Petitioner's cumulative error claim necessarily fails.  *See id.* ("[a]s

11    our discussion of the ineffective assistance claims illustrates, Davis has not demonstrated

12    prejudice as to the individual claims, and the nature of the claims does not support a

13    conclusion of cumulative prejudice").

14    **III.    Actual Innocence**

15    Petitioner also makes a freestanding claim of actual innocence.  ECF No. 5 at 35-

16    37.  Petitioner largely repeats his freestanding actual innocence arguments from his state

17    habeas petitions.  *See* ECF No. 11-10 at 20–21 (San Diego Superior Court Petition for

18    Writ of Habeas Corpus); ECF No. 11-12 at 20–21 (California Court of Appeal Petition

19    for Writ of Habeas Corpus); ECF No. 11-15 at 20–21 (California Supreme Court Petition

20    for Review of Denial of Habeas Corpus Petition).  The state appellate court, in the last

21    reasoned state court decision, denied Petitioner's freestanding actual innocence claim:

22    The claim of new evidence of innocence fails to state a prima facie
case. Habeas corpus relief is available when "[n]ew evidence exists that is

23    credible, material, presented without substantial delay, and of such decisive

24    force and value that it would have more likely than not changed the outcome

25

26    [8] Because the Court holds that the state court reasonably found that this claim is waived, it need not address Respondent's argument that Petitioner's claim lacks credibility.

27

28

at trial." (Pen. Code, § 1473, subd. (b)(3)(A).) "For purposes of this section, 'new evidence' means evidence that has been discovered after trial, that could not have been discovered prior to trial by the exercise of due diligence, and is admissible and not merely cumulative, corroborative, collateral, or impeaching." (*Id.*, § 1473, subd. (b)(3)(B).) The declarations Beason now offers from his wife and stepson to establish an alibi defense do not qualify as "new evidence" for three reasons.

*First*, the evidence was readily available before trial. (See Pen. Code, § 1473, subd. (b)(3)(B).) Beason alleges he told counsel before trial about his alibi that on the day of the robbery he was "zonked out on medication" at home with his wife and stepson, and during trial he complained to the court about counsel's failure to investigate and present the alibi defense. *Second*, Beason did not present the declarations "without substantial delay." (*Id.*, § 1473, subd. (b)(3)(A).) He did not obtain the declarations until April 16, 2021, and did not present them to the superior court until August 20, 2021, three years after sentencing. Why it took Beason so long to present to the superior court declarations from members of his own household is not explained. *Third*, the alibi evidence is not "credible" and "of such decisive force and value that it would have more likely than not changed the outcome at trial." (*Ibid.*) Beason's wife and stepson have an obvious bias and motive to provide an alibi (Evid. Code, § 780, subd. (f)), and their declarations do not clearly establish an alibi. The wife stated she saw Beason asleep in their bedroom before she left for work at approximately 5:00 a.m. on the day of the robbery. The stepson stated his mother later telephoned and asked him to tell Beason to take keys to her at work, the stepson woke Beason up, and Beason left at approximately 6:45 a.m. to deliver the keys. Neither declaration excludes the possibility that Beason left home after his wife had gone to work; drove to the convenience store, which was about 11 minutes away; committed the robbery; and drove home and went to sleep before his stepson woke him up. When this weak alibi evidence is compared to the evidence introduced against Beason at trial, including T.T.'s description of the robber, the video surveillance of the robbery, the towel with Beason's DNA found at the crime scene, and the discovery of matching towels in his car and home, it does not appear more likely than not that the jury would have acquitted Beason of robbery had the alibi evidence been introduced at trial. Habeas corpus relief on the ground of new evidence is therefore not available.

ECF No. 11-14 at 3–4.

1    Now, Petitioner argues that the state court's decision was "objectively

2 unreasonable" because the sworn, post-conviction declarations of his wife and stepson

3 constitute "new evidence" and are "of such decisive force and value that [they] would

4 have more likely than not changed the outcome at trial[.]"  ECF No. 5 at 35–37.

5 Respondent counters that Petitioner's freestanding actual innocence claim is not

6 cognizable because there is no clearly established federal law on the issue, and that, even

7 if it was cognizable, the state court reasonably rejected the claim.  ECF No. 11-1 at 29–

8 31.

9    **A. Governing Law**

10    The Supreme Court "ha[s] not resolved whether a prisoner may be entitled to

11 habeas relief based on a freestanding claim of actual innocence."  *McQuiggin v. Perkins*,

12 569 U.S. 383, 392 (2013); *see also Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557

13 U.S. 52, 71 (2009); *Herrera v. Collins*, 506 U.S. 390, 416–17 (1993); *accord Jones v.*

14 *Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("[w]e have not resolved whether a

15 freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding

16 in the non-capital context").  While acknowledging the lack of clearly established federal

17 law on the issue, the Ninth Circuit has consistently "assumed that such a claim is viable."

18 *Jones*, 763 F.3d at 1246; *see also Carriger v. Stewart*, 132 F.3d 463, 476-77 (9th Cir.

19 1997).

20    In *Herrera*, the Supreme Court, "for the sake of argument," stated that the

21 threshold showing for a freestanding actual innocence claim "would necessarily be

22 extraordinarily high."  506 U.S. at 417.  In assuming the viability of freestanding actual

23 innocence claims, the Ninth Circuit has "held that, at a minimum, the petitioner must 'go

24 beyond demonstrating doubt about his guilt, and must affirmatively prove that he is

25 probably innocent."  *Jones*, 763 F.3d at 1246 (quoting *Carriger*, 132 F.3d at 476); *see*

26 *also Herrera*, 506 U.S. at 442-44 (Blackmun, J., dissenting) ("I would hold that, to obtain

27

28

3:21-cv-02052-GPC-MSB

1  relief on a claim of actual innocence, the petitioner must show that he probably is

2  innocent").  Petitioner must show evidence "that would preclude any possibility of [his]

3  guilt," *Carriger*, 132 F.3d at 477, or conclusive[ly] exonerate[e]" him, *House v. Bell*, 547

4  U.S. 518, 555 (2006).

5      **B. Analysis**

6          Here, while the Supreme Court has not decided whether habeas relief is

7  appropriate based on freestanding claims of actual innocence, the Court will follow the

8  Ninth Circuit's practice of "assum[ing] that such a claim is viable."  *Jones*, 763 F.3d at

9  1246; *see also Diaz v. Borders*, 2017 WL 2868466, at *7 (E.D. Cal. July 5, 2017)

10  (assuming, without deciding, that a freestanding actual innocence claim is viable and

11  addressing claim under the Ninth Circuit's assumed standard).

12          Despite the governing federal law on actual innocence, Petitioner largely argues

13  that he is entitled to relief based on state law.  ECF No. 5 at 35-37.  He argues that

14  because the proffered declarations constitute "new evidence … of such decisive force and

15  value that it would have more likely than not changed the outcome at trial," he is entitled

16  to federal habeas relief.  *Id.* at 37 (citing Cal. Penal Code § 1473(b)(1)(C)(i)).

17  Respondent argues that, for the reasons described in the state court decision, the

18  declarations lack credibility and generally provide weak support for a claim of actual

19  innocence.  ECF No. 11-1 at 30–31.

20          Petitioner has submitted three declarations in support of his claim of actual

21  innocence: (1) the declaration of Tamika Beason, his wife; (2) the declaration of Tracey

22  Lacey, his stepson; and (3) his own declaration.[9]  *See* ECF No. 11-13 at 3-8.  Tamika's

23  declaration states that Petitioner was asleep at home at 5:00 a.m. on the morning of the

24

25

26  [9] These are the same declarations Petitioner submitted in support of his alibi defense.  *See supra* Section
III.B.  Essentially, Petitioner claims that his alibi defense supports a freestanding claim of actual
innocence.

27

28

35

1  crime. *Id.* at 3. She states that she tried to call Petitioner between 5:15 and 5:30 a.m.

2  because she forgot her keys at home, but he did not answer. *Id.* She then called her son

3  Tracey, who presumably passed the message along to Petitioner. *Id.* She states that

4  Petitioner brought her keys around 7:00 a.m. *Id.* Tracey's declaration follows Tamika's

5  story: he states that Tamika called him regarding her keys and that he subsequently woke

6  Petitioner up and asked him to deliver Tamika's keys. *Id.* at 5. He states that Petitioner

7  left around 6:45 a.m. to deliver Tamika's keys. *Id.* Petitioner's own declaration details

8  the medications he was taking at the time and follows the story detailed in the other

9  declarations. *Id.* at 7. He states that he had been sleeping since 3:00 a.m. before Tracey

10 woke him up to deliver Tamika's keys. *Id.* He states that he left to deliver the keys at

11 6:45 a.m. *Id.* All three declarations are signed and dated in April 2021, *id.* at 3–8—

12 nearly three years after Petitioner's June 12, 2018 conviction, ECF No. 11-4 at 600–03.

13          Petitioner falls far short of affirmatively proving that he is innocent. First, there

14 are significant credibility concerns surrounding the declarations, as the Court has already

15 detailed. *See supra* Section II.B. And even assuming the declarations are credible, the

16 state court correctly points out that they don't necessarily provide an airtight alibi. The

17 state court reasoned that the declarations do not "exclude[] the possibility that Beason left

18 home after his wife had gone to work; drove to the convenience store, which was about

19 11 minutes away; committed the robbery; and drove home and went to sleep before his

20 stepson woke him up." ECF No. 11-14 at 4. Indeed, the victim's testimony at trial

21 confirms that the perpetrator entered the convenience store around 5:08 a.m. ECF No.

22 11-4 at 139–40. Even if Tamika saw Petitioner asleep when she left to work "at

23 approximately 5:00 a.m.," ECF No. 11-13 at 5, this timeline leaves open the possibility

24 that Tamika left shortly before 5:00 a.m. and that Petitioner left immediately after,

25 driving 11 minutes to reach the convenience store by 5:08 a.m. The declarations

26 therefore do not affirmatively prove Petitioner's innocence. *See Gimenez v. Ochoa*, 821

27

28

36

F.3d 1136, 1146 (9th Cir. 2016) (denying freestanding actual innocence claim in part because "[t]he evidence falls far short of a *persuasive* alibi") (emphasis added).

The Ninth Circuit's decision in *Prescott v. Santoro*, 53 F.4th 470 (9th Cir. 2022), is instructive here. There, the petitioner challenged his murder conviction, in part on the grounds of actual innocence. *Id.* at 477-83. The petitioner presented two letters written by his co-defendant which claimed that the co-defendant—not the petitioner—committed the murder. *Id.* at 475-76. However, the Ninth Circuit denied the petitioner's claim. *Id.* at 482-83. The court noted that there were some contradictions in the letters and that the co-defendant had a history of lying, which casted doubt on the letters' credibility. *Id.* at 483. The court further emphasized that "the record contains extensive and compelling evidence supporting [the petitioner's] conviction." *Id.* Therefore, the petitioner failed to meet the standard for establishing actual innocence. *Id.* Similarly, in this case, considering the noted faults of the declarations, the evidence Petitioner puts forth in support of his innocence pales in comparison to the ample evidence supporting Petitioner's conviction. Among this evidence are the victim's description of the robber, the video surveillance of the robbery, the presence of Petitioner's DNA on the towel left behind at the convenience store, and the discovery of similar towels in Petitioner's car and home. Petitioner's weak alibi evidence cannot overcome the evidence implicating him as the robber. *See Hooper v. Shinn*, 56 F.4th 627, 635 (9th Cir. 2022) ("[g]iven the overwhelming evidence implicating Hooper as the murderer, he fails to show actual innocence). Petitioner therefore fails to affirmative prove his innocence.

## IV.    Fundamental Miscarriage of Justice

Petitioner makes a brief claim that there was a fundamental miscarriage of justice which renders the state court decision objectively unreasonable. ECF No. 5 at 27–28.

1    Petitioner almost exclusively relies on state habeas corpus law in making this claim.[10]

2    ECF No. 5 at 27–28.  Respondent asserts that the state court's implicit rejection of this

3    claim was reasonable.  ECF No. 11-1 at 22.

4         As a general matter, the fundamental miscarriage of justice "exception allows

5    federal courts to excuse procedural default in the 'truly deserving' habeas petition where

6    there is a showing of actual innocence."  *Gage v. Chappell*, 793 F.3d 1159, 1167 (9th Cir.

7    2015) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Sawyer v. Whitley*, 505 U.S. 333,

8    336 (1992)).  The exception "provides a gateway past the procedural requirements

9    imposed by AEDPA," which might otherwise bar federal courts from "consider[ing] the

10   merits of certain procedurally defaulted habeas petitions asserting constitutional

11   violations."  *Id.* at 1166–67.

12        The Supreme Court in *Schlup* clarified that a claim of actual innocence brings a

13   petition within a "narrow class of cases implicating a fundamental miscarriage of

14   justice."  *Schlup*, 513 U.S. at 314–15 (cleaned up).  By falling within this narrow class of

15   cases, petitioners can obtain review of constitutional claims despite procedural default.

16   *Id.*  But such a claim "does not by itself provide a basis for relief."  *Id.* at 315.  Therefore,

17   Petitioner cannot state a claim for a fundamental miscarriage of justice without a

18   procedural default that otherwise prevents the Court from reviewing any of Petitioner's

19   constitutional claims here.  *See id.*

20        Petitioner fails to state a cognizable claim for federal relief under the fundamental

21   miscarriage of justice exception.  Petitioner contends that because the facts of his case

22   meet the state law standard for a fundamental miscarriage of justice, he is entitled to

23   relief.  But Plaintiff does not identify a procedural default that is preventing the Court

---

[10] Further, the argument is nearly identical to the "fundamental miscarriage of justice" argument Petitioner made in his state habeas petition.  *Compare* ECF No. 5 at 27–28 *with* ECF No. 11-12 at 12.

from reviewing any of his constitutional claims.  In fact, the Court here has addressed all of Petitioner's claims on the merits, even if the claims were not fully recognized under AEDPA.  *See supra* "Discussion" Section I (addressing evidentiary claims on merits despite lack of clearly established federal law) and Section III (assuming freestanding actual innocence claim would be viable).  Because there are no procedural bars standing in the way of Petitioner's constitutional claims, his claim that there was a fundamental miscarriage of justice finds no place in the Petition.

Petitioner also seems to argue that the state appellate court's denial of his fundamental miscarriage of justice claim was unreasonable.  ECF No. 5 at 27–28. Petitioner clarifies on reply that he "is claiming actual innocence and ineffective assistance of trial counsel because defense counsel failed to investigate and present his alibi defense at trial and []refused to allow him to testify."  ECF No. 12 at 9.  The state court did not explicitly reject Petitioner's fundamental miscarriage of justice claim, but it did reject Petitioner's underlying IAC and actual innocence claims on their merits.  ECF No. 11-14.  And, as discussed above, Petitioner cannot establish that the state court's decision on the merits was unreasonable.  Accordingly, Petitioner's claim that the state court's decision was objectively unreasonable fails.

Petitioner fails to asset any cognizable claim that a fundamental miscarriage of justice warrants habeas relief.

## V.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases states that the district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court may issue a certificate of appealability  "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make this showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, Petitioner has not made the required showing. For the reasons described throughout this Order, reasonable jurists would not find the Court's decision wrong or debatable, nor would they find that the presented issues deserve encouragement to proceed further. Therefore, the Court DENIES a certificate of appealability.

## CONCLUSION

For the reasons described above, the Court ADOPTS the Magistrate Judge's Report and Recommendation, OVERRULES Petitioner's objections to the Report and Recommendation, DENIES and DISMISSES the amended petition for writ of habeas corpus, and DENIES a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  March 25, 2025

Hon. Gonzalo P. Curiel
United States District Judge

3:21-cv-02052-GPC-MSB